320 So.2d 819 (1975)
THE FLORIDA BAR, Complainant,
v.
Frederick O. LEOPOLD, Respondent.
No. 47650.
Supreme Court of Florida.
October 15, 1975.
Wilson J. Foster, Jr., Tallahassee, and Richard G. Gordon, Fort Lauderdale, for The Florida Bar, Complainant.
Thomas A. Thomas, Hollywood, for respondent.
*820 PER CURIAM.
This disciplinary proceeding by The Florida Bar against Frederick O. Leopold is before us on complaint of The Florida Bar and report of the referee. Pursuant to Rule 11.06(9)(b) of the Integration Rule of The Florida Bar, the referee's report and record of the proceedings were duly filed with this Court. No petition for review pursuant to Rule 11.09, Integration Rule, has been filed by respondent Leopold.
The Florida Bar filed a complaint against respondent in October, 1973, charging that respondent failed to file a claim with the Florida Industrial Commission on behalf of Mrs. Angerami; or if said claim was filed, he failed to diligently prosecute the claim to final hearing within the prescribed statutory period. The complaint further charged that respondent attempted to limit his liability to Mrs. Angerami. Hearings were held on February 26, 1975 and May 2, 1975, before the referee, who after considering the pleadings, exhibits and evidence, found, as follows:
"1. In August of 1968, respondent undertook representation of Mrs. Joan Angerami regarding the filing of a workman's [sic] compensation claim.
2. The record is clear that the respondent did, in fact, timely file the claim letter after undertaking representation of Mrs. Angerami.
3. The question left to be answered is whether the respondent failed to diligently prosecute his client's claim.
4. Mrs. Angerami left for New Jersey shortly after contacting respondent to handle this matter for her. It appears that Mrs. Angerami's father, John Bishop, resided in Broward County, Florida, and acted as liaison between his daughter and the respondent regarding this case.
5. According to respondent's testimony, his client's claim would have had to be heard or scheduled for hearing prior to August 19, 1971, or two years from the date of the last authorized medical treatment rendered to his client which was August 19, 1969.
6. It appears that the respondent and Mrs. Angerami maintained a fairly good attorney/client relationship from August of 1968 until March of 1970, which is the date that the respondent wrote to Mrs. Angerami.
7. As best as can be determined from the evidence, the attorney/client relationship broke down between March, 1970, and September, 1970, because in the month of September, Mrs. Angerami wrote to the respondent (Bar's Exhibit 3), advising him that he was `released of all matters pertaining to my case.'
8. According to the testimony of Mrs. Angerami, she did speak with the respondent subsequent to writing to him in September of 1970, the net effect of her conversation with the respondent was to leave her with the impression that he was still representing her, notwithstanding her letter to him in September of 1970. On December 14, 1970, Mrs. Angerami wrote to respondent enclosing to him the medical report of a chiropractor by whom she had been treated. On February 24, 1971, John Bishop wrote to respondent for a status report and respondent did not reply. On July 24, 1971, John Bishop wrote requesting a status report and respondent still did not reply. On January 21, 1972, Mrs. Angerami wrote respondent requesting a status report in the matter, again with no status report forthcoming. On August 11, 1972, Mr. Bishop wrote respondent for a status report, requesting as well a release, however, respondent still did not respond.
9. The respondent's testimony indicates that he did speak with Mrs. Angerami on or about the time of her letter to him of September, 1970, however, it is unclear as to whether this conversation *821 took place prior to receiving the letter or after receiving the letter. The respondent indicated he would turn the file over to another attorney if requested, and further testified that he had been contacted by another attorney regarding this matter.
10. The evidence shows that Mrs. Angerami and her father continued to correspond with the respondent as indicated in paragraph 8 hereunder, and considered respondent to be their counselor.
11. After receiving the letter of September, 1970, from Mrs. Angerami, the respondent retained the file and remained the attorney of record. He did not file any motion to withdraw, nor did he notify the Industrial Commission, nor the insurance carrier, that he was no longer representing Mrs. Angerami. The respondent received bills from Mrs. Angerami and request for status reports subsequent to the letter of September, 1970. Although respondent's testimony that he retained the file and remained the attorney of record because he did not want to leave Mrs. Angerami `stranded' is commendable, the Statute of Limitations expired and he should have realized that by retaining the case he was fully responsible for the case and the conduct thereof."
Relative to the charge of respondent's attempting to limit his liability, the referee found:
"1. On Friday, April 20, 1973, the respondent received a Notice to Appear before the grievance committee which was investigating Mrs. Angerami's complaint against him. The grievance committee meting was scheduled for April 25, 1973.
2. Respondent contacted the investigator for the committee and asked if there would be any prohibition against contacting the complainant regarding her charge and was advised there was no prohibition against his contacting Mrs. Angerami.
3. The respondent met with the complainant on February 24, 1973, at which time he advised her that her claim was barred by the Statute of Limitations.
4. The respondent testified that Mrs. Angerami wanted her claim paid and that he wanted to avoid a lawsuit being filed against him and his insurance carrier.
5. In order to avoid this claim, the respondent calculated the damage the complainant received, assuming all facts were decided in her favor. He thereafter drew a check payable to Mrs. Angerami in the amount of $4,000.00 which said check was dated March 24, 1973.
6. On or about April 25, 1973, the respondent reduced to writing the agreement of the parties and said agreement was executed by the respondent and Mrs. Angerami.
7. It does not appear that the respondent in any manner coerced Mrs. Angerami to execute the agreement and it affirmatively appears that she had independent legal counsel prior to executing the agreement. Her independent legal counsel advised her that it was all right for Mrs. Angerami to sign. It further appears from the record that the respondent and Mrs. Angerami's independent counsel did not communicate with each other regarding the agreement.
8. The agreement that was executed by the parties does not contain wording which in any way appears to limit respondent's liability to Mrs. Angerami. There is no provision for a release of liability of each to the other from the beginning of time to the date of the agreement.
9. The respondent on April 26, 1973, wrote to Mrs. Angerami advising her that he would be responsible for `all future *822 medical bills' arising out of the accident and not included in the agreement, thereby expanding the agreement.
10. It is to be noted that this agreement was exhibited at the grievance committee hearing on April 25, 1973. It is obvious that the respondent was totally unaware of the prohibition of DR 6-102(A).
11. Notwithstanding the foregoing, the purpose of the agreement was to limit the liability of the respondent."
The referee recommends that respondent be found guilty as charged in the complaint of violating his oath as an attorney, Article XI, Rule 11.02(2), and specifically Disciplinary Rules 6-101(A)(3), 7-101(A) (3), and 6-102(A) of the Code of Professional Responsibility, and recommends that a public reprimand be administered to respondent.
The findings and recommendations of the referee are approved and this opinion shall constitute a public reprimand of respondent.
Execution is hereby directed to issue for costs against respondent in the amount of $962.30.
It is so ordered.
ADKINS, C.J., and ROBERTS, OVERTON, ENGLAND and HATCHETT, JJ., concur.
BOYD, J., dissents.